UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETER SPYTEK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of the ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) | Case No. C09-1687-RSM-BAT <br><br> **REPORT AND** <br> **RECOMMENDATION** |

Plaintiff, Peter Spytek, seeks judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration, after a hearing before an administrative law judge ("ALJ"). Dkt. 1. Spytek contends that the ALJ erred by: (1) failing to find that Spytek's cervical degenerative disc disease was a medically determinable impairment, (2) rejecting the opinion of Daniel Phan, M.D., that Spytek was limited to sedentary work, (3) failing to address the lay evidence as to the onset date of Spytek's impairment, and (4) finding Spytek not credible. Spytek further argues that the ALJ erred in finding that he was not disabled prior to his date last insured and seeks remand of this case for payment of benefits. Dkt. 9. For the reasons below, the Court recommends that the Commissioner's decision be **REVERSED** and this case **REMANDED** for payment of benefits.

REPORT AND
RECOMMENDATION – 1

# I.  FACTUAL AND PROCEDURAL HISTORY

Spytek, who was born in 1944, was 53 years old as of his date last insured, December 31, 1997.  Tr. 73, 83.  He has a high school education and past work experience as a carpenter.  Tr. 86.  He was injured in a motor vehicle accident at the age of 18, fracturing his lumbar vertebrae, and was in another motor vehicle accident in 1990.  Tr. 138-39.  Spytek last worked in 1996 in an office-type position at a construction company.  Tr. 31-32.

On September 28, 2001, he applied for disability insurance benefits and supplemental security income, alleging disability as of December 31, 1996.  Tr. 73, 100.  The Commissioner granted his application for supplemental security income, but denied his application for disability insurance benefits initially and on reconsideration.  Tr. 44, 50.  The ALJ held a hearing on May 8, 2003, and issued a decision on June 10, 2003, finding that Spytek was not disabled prior to the date his insured status expired, December 31, 2007.  Tr. 13-21.  The Appeals Council denied review of the decision.  Tr. 6.  Spytek then filed an action in this Court seeking judicial review of the decision.  The Court reversed and remanded for further proceedings.  Tr. 243-56.

The ALJ held a second hearing on May 3, 2005 and issued a decision on September 8, 2005, again finding that Spytek was not disabled before his date last insured.  Tr. 261-68.  Spytek filed objections to that decision with the Appeals Council.  Tr. 347.  When the Appeals Council failed to review the objections for more than two years, Spytek again filed an action in this Court on March 13, 2008.  The Commissioner moved to dismiss for failure to exhaust administrative remedies, but the Court concluded that the Commissioner had not reviewed Spytek's objections in a timely manner and ruled that the Commissioner should either answer Spytek's complaint or rule on his objections.  *See Spytek v. Astrue*, No. C08-421-JCC-JPD (W.D. Wash. July 14, 2008).  On August 5, 2008, the Appeals Council ruled on Spytek's objections,

REPORT AND
RECOMMENDATION – 2

remanding the case for further proceedings. Tr. 269-76.

The ALJ held a third hearing on May 15, 2009 and issued a decision on July 30, 2009, again finding that Spytek was not disabled before his date last insured. Tr. 219-30. The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled.[1] At step one, the ALJ found that Spytek did not engage in substantial gainful activity during the time between his alleged onset date and his date last insured. Tr. 225.

At step two, the ALJ found that through his date last insured, Spytek had the following severe impairments:  old compression fracture at L3 and degenerative disc disease at L4-5 and L5-S1.  *Id.*

At step three, the ALJ found that through his date last insured, Spytek did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[2]  Tr. 226.

The ALJ next found that through his date last insured, Spytek had the residual functional capacity to perform the full range of light work.  He could stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  He could lift and/or carry 20 pounds occasionally and 10 pounds frequently.  *Id.*

At step four, the ALJ found that through his date last insured, Spytek could not perform any past relevant work. Tr. 229.

At step five, the ALJ found that through his date last insured, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Spytek could have performed.  *Id.*  The ALJ

---

[1] *See* 20 C.F.R. § 404.1520.

[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND
RECOMMENDATION – 3

thus found that Spytek was not disabled from his alleged onset date through his date last insured. Tr. 230.

When the Appeals Council did not assume jurisdiction of the decision, it became the Commissioner's final decision. Tr. 220. Spytek now seeks judicial review of the July 2009 decision.

## II.  STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## III.  DISCUSSION

**A.     Spytek's medically determinable impairments**

Spytek first argues that the ALJ erred by failing to find that his degenerative disc disease in his neck was a medically determinable severe impairment. Dkt. 9 at 8.

At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically

REPORT AND
RECOMMENDATION – 4

1  acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508.  An impairment
2  is severe if it significantly limits the claimant's physical or mental ability to do basic work
3  activities.  20 C.F.R. § 404.1520(c), 404.1521(a).  The step-two inquiry is "a *de minimis*
4  screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th
5  Cir. 1996).  An impairment or combination of impairments can be found "not severe" only if the
6  evidence establishes a slight abnormality that has no more than a minimal effect on an
7  individual's ability to work.  *Id.*  The claimant bears the burden of showing a medically
8  determinable severe impairment.  *Bowen*, 482 U.S. at 146 & n.5.
9       Spytek points to a May 1990 x-ray that found evidence of degenerative disc disease of
10 the cervical spine between C4, C5, C6, and C7.  Tr. 138.  Treating physician Glen Gordon, M.D.,
11 in July 1990 assessed Spytek with cervical, dorsal, and lumbar strain and headaches secondary to
12 cervical strain.  Tr. 141.  After his date last insured, an April 2001 MRI found evidence of
13 moderate degenerative disc disease at C5-C6.  Tr. 168-69.  The medical expert who testified at
14 the May 2005 hearing acknowledged that Spytek had degenerative changes in his neck.  Tr. 338.
15      The ALJ mentioned these findings in his discussion of Spytek's severe impairments, but
16 he did not evaluate whether this was a medically determinable impairment or whether it was
17 severe.  This was error.  However, the Court need not decide if this error was harmful.  First, the
18 ALJ found that plaintiff's degenerative disc disease of the lumbar spine was a severe impairment
19 and proceeded with the evaluation process.  And second, given the Court's resolution of Spytek's
20 other assignments of error, any error here would not affect the outcome of this case.
21 **B.    The ALJ erred by rejecting Dr. Phan's opinion**
22      Spytek argues that the ALJ erred in giving little weight to Dr. Phan's opinion that Spytek
23 was limited to sedentary work as of April 2008.  Dkt. 9 at 11-12.  In general, more weight should

REPORT AND
RECOMMENDATION – 5

1 | be given to the opinion of an examining physician than to a non-examining physician. *Lester v.*
2 | *Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, an
3 | examining physician's opinion may be rejected only for "clear and convincing reasons." *Id.* at
4 | 830-31. Where contradicted, an examining physician's opinion may not be rejected without
5 | "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at
6 | 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by
7 | setting out a detailed and thorough summary of the facts and conflicting evidence, stating his
8 | interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d
9 | 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also
10 | explain why his interpretation, rather than the examining doctor's interpretation, is correct. *Orn*
11 | *v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th
12 | Cir. 1988).
13 |       On April 24, 1998 and May 4, 1998, Dr. Phan examined Spytek and reviewed an x-ray
14 | report completed by Ken Heilbrunn, M.D. Dr. Phan opined that Spytek could perform sedentary
15 | work but that he would be unable to perform at least half time in a normal work setting for six
16 | months. Tr. 142-43. Dr. Phan found that Spytek had decreased dorsolumbar range of motion,
17 | decreased deep tendon reflexes in the lower extremities, and evidence of an old compression
18 | fracture at L3 and degenerative disc disease at L4-5 and L5-S1. He opined that until Spytek's
19 | back was evaluated and treated, he would have difficulty with more than sedentary work. Tr.
20 | 144-45.
21 |       At the direction of the Appeals Council, the ALJ recontacted Dr. Phan prior to Spytek's
22 | third hearing. Dr. Phan stated that he had no independent memory of evaluating Spytek. He did
23 | not have an opinion as to when Spytek's impairment may have become severe enough to impair

REPORT AND
RECOMMENDATION – 6

his work activities or how long after the report he expected the impairment to last.  Tr. 399.

The ALJ, after noting that Dr. Phan evaluated Spytek after his date last insured,[3] gave Dr. Phan's opinion little weight "as it is not consistent with the other objective medical evidence." Tr. 227.  Although the ALJ stated this finding would be "discussed more thoroughly below," nowhere in the ALJ's decision does the ALJ identify any objective medical evidence that is inconsistent with Dr. Phan's opinion.

An ALJ may properly reject a treating physician's opinion that is not supported by objective evidence.  *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  But to merely state that a medical opinion is not supported by sufficient objective findings is not specific enough to reject an examining doctor's opinion.  *See Embrey*, 849 F.2d at 421-22.  Here, the ALJ failed to explain why his interpretation, rather than Dr. Phan's, was correct.  *See Orn*, 495 F.3d at 632.  The ALJ's finding that Dr. Phan's opinion was not consistent with the other objective medical evidence was not a specific and legitimate reason to give the opinion little weight.  The ALJ erred by rejecting Dr. Phan's opinion.

**C.    The ALJ erred by failing to consider lay witness evidence**

Spytek also argues that the ALJ erred in evaluating the lay witness evidence from his brother and his chiropractor when determining the onset date of Spytek's disability.  Lay testimony about a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to each witness for doing do.  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

---

[3] Although the ALJ did not give this as a reason for rejecting Dr. Phan's opinion, the Court notes that medical evaluations conducted after a claimant's date last insured are relevant to an evaluation of the condition before that date.  *Lester*, 81 F.3d at 832.

REPORT AND
RECOMMENDATION – 7

An undated letter from Spytek's brother, Casimir Spytek, was attached to a September 2001 daily activity questionnaire completed by Spytek. In the letter, Casimir stated that Spytek had had back troubles since he was a young man. He further stated that Spytek had lived in New England for a few years and moved back to the Northwest in late 1997. Casimir stated, "At that time it was very obvious to me, that his back was really troubling him a lot. It was hard for him to complete most normal long term activities. He was being treated by a chiropractor on a regular basis." Tr. 119. The ALJ mentioned Spytek's reports of problems with walking, sitting, lifting, and carrying in the daily activity questionnaire, but did not mention Casimir's letter. Tr. 227.

The ALJ erred by failing to take Casimir Spytek's opinion into account in determining Spytek's residual functional capacity. Casimir's letter, although not detailed, commented on the severity of Spytek's impairment and squarely placed his opinion within the critical timeframe, after Spytek's alleged onset date and before his date last insured. This was competent evidence that the ALJ should have considered.

Spytek received chiropractic treatment from Harley Gilthvedt, D.C., from at least 1987 until 2000. Tr. 185-93. In October 1987, Dr. Gilthvedt diagnosed Spytek with multiple vertebral subluxations complicated by an old spinal injury. Tr. 139. In July 1990, Dr. Gilthvedt diagnosed Spytek with an acute, traumatic spinal injury, causing spinal strain and producing multiple vertebral subluxations. He stated that Spytek had responded well to care but continued to have considerable pain in his lumbar spine. He further stated that Spytek had spondylarthiritis and disc degeneration in his lumbar spine affecting the stability of his spine. Tr. 138. The ALJ considered Dr. Gilthvedt's records in his step two evaluation, but did not consider them when evaluating his residual functional capacity. Tr. 225.

REPORT AND
RECOMMENDATION – 8

Although a chiropractor is not an "acceptable medical source," his opinion may be used to evaluate the severity of a claimant's impairment and how it affects his ability to work. 20 C.F.R. 404.1513(a), (d). The ALJ may evaluate opinions of "other" medical sources in the same manner as medical opinions of acceptable medical sources, but the ALJ may give less weight to opinions of other medical sources than to those of acceptable medical sources. SSR 06-03p.

Here, the ALJ considered Dr. Gilthvedt's opinions in finding that Spytek had a medically determinable severe impairment prior to his date last insured, but did not consider them in evaluating Spytek's residual functional capacity. Although Dr. Gilthvedt's opinions do not directly address the relevant time period, they are relevant to an evaluation of Spytek's residual functional capacity, particularly due to the degenerative nature of Spytek's impairment. The ALJ should have taken Dr. Gilthvedt's opinions into account when evaluating Spytek's residual functional capacity.

**D.     The ALJ erred in finding Spytek not fully credible**

Spytek argues that the ALJ erred in finding his complaints not fully credible without stating specific reasons for the finding. Dkt. 9 at 14. In evaluating the effect of pain and other subjective symptoms on a claimant's residual functional capacity, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. If so, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work. *See id.* If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen*, 80 F.3d at 1283-84.

REPORT AND
RECOMMENDATION – 9

Here, the ALJ found that Spytek's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Spytek's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity finding.  Tr. 227.  The ALJ did not specify any reasons for finding Spytek not fully credible, although, as Spytek points out, the ALJ implied that Spytek's statements were "not substantiated by objective medical evidence."  *Id.*  Although a lack of supporting objective medical evidence is a relevant factor that the ALJ can consider in his credibility analysis, it cannot be the sole reason an ALJ discounts a claimant's subjective complaints.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The Commissioner argues that the ALJ discounted Spytek's credibility because he did not seek medical treatment other than chiropractic care during the disability period, there were reports of improvement in the record, he declined to try various treatment options recommended to him after the disability period ended, and, as noted in the September 2005 decision, he injured his hand with a nail gun.  Dkt. 14 at 5-6.  However, the ALJ did not himself invoke these reasons for finding Spytek not fully credible.  The Commissioner's argument is therefore an improper post-hoc rationalization that this Court cannot rely on to affirm the ALJ.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).  Because the ALJ failed to make specific findings stating clear and convincing reasons for his finding, the ALJ erred in finding Spytek not fully credible.

**E.       The ALJ's application of SSR 83-20**

Spytek argues that the ALJ erred in applying Social Security Ruling ("SSR") 83-20 by failing to properly assess the medical and other evidence and Spytek's testimony in determining his disability onset date.  Dkt. 9 at 12, 14-15.

REPORT AND
RECOMMENDATION – 10

1    SSR 83-20 governs the evaluation of the onset date of disability.[4]  It provides that for

2 disabilities of nontraumatic origin, the determination of onset involves consideration of the

3 claimant's allegations, work history, and the medical and other evidence of severity.  The

4 claimant's alleged onset date should be used if it consistent with all of the evidence available.

5 But the medical evidence is the primary element in the determination, and the onset date can

6 never be inconsistent with the medical evidence.

7    When the medical evidence does not establish a precise onset date, the ALJ must infer the

8 onset date from the medical and other evidence.  The ALJ may be able to reasonably infer that

9 onset occurred prior to the first recorded medical examination, but this judgment must have a

10 "legitimate medical basis."  The ALJ should call on a medical expert when onset must be

11 inferred.  The ALJ should set the onset date as the date it is "most reasonable" to conclude that

12 the impairment was sufficiently severe to be disabling.  The ALJ must give "convincing

13 rationale" for the date selected.  SSR 83-20; *see also DeLorme v. Sullivan*, 924 F.2d 841, 848

14 (9th Cir. 1991); *Morgan v. Sullivan*, 945 F.2d 1079, 1082-83 (9th Cir. 1991).

15    Here, Spytek's alleged onset date of December 31, 1996 is consistent with his last work

16 in 1996.  However, there is no medical evidence from July 1990 through April 1998.[5]  The ALJ

17 thus called on the services of an orthopedic medical expert, William Newman, M.D.  Dr.

18 Newman testified that, based on the April 1998 x-ray, Spytek would have been capable of

---

[4] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, the courts give SSRs deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[5] The record contains a medical evaluation from December 26, 1997.  Tr. 387-88.  However, the ALJ gave no weight to the opinions expressed therein because the evaluation was unsigned.  Tr. 228.

REPORT AND
RECOMMENDATION – 11

1  performing light work before his date last insured.  Tr. 423-24.  He further testified that Spytek's
2  condition is degenerative and that it significantly worsened from 1998 through 2001.  Tr. 424-25.
3  The ALJ gave significant weight to this testimony, finding that it was consistent with the
4  objective medical evidence.  Tr. 228.
5       In finding that Spytek had the capacity for light level work as of his date last insured, the
6  ALJ drew inferences from the lack of medical care and evaluations during the disability period,
7  Spytek's testimony that his condition worsened between the time he filed his first application for
8  disability benefits and the time he filed the application under consideration, and Dr. Newman's
9  testimony that worsening of Spytek's condition was to be expected.  The ALJ gave little weight
10 to Dr. Phan's opinion that Spytek was capable of sedentary work in April 1998, except for
11 showing that Spytek's residual functional capacity was more limited in April 1998 than it would
12 have been on December 31, 1997.  Tr. 229.
13      However, as discussed above, the ALJ erred in rejecting Dr. Phan's opinion.  Where an
14 ALJ fails to provide adequate reasons for rejecting an examining physician's opinion, the Court
15 may credit that evidence as a matter of law.  *See Lester*, 81 F.3d at 834.  Crediting as true Dr.
16 Phan's opinion that in April 1998 Spytek could perform sedentary work but that he would be
17 unable to perform at least half time in a normal work setting for six months from that date, the
18 ALJ's inference that just four months earlier Spytek could perform light work does not have a
19 legitimate medical basis.
20      Also as discussed above, the ALJ erred in failing to consider Casimir Spytek's and Dr.
21 Gilthvedt's opinions and in finding Spytek not credible.  The Court may also credit as true a
22 claimant's testimony and lay witness evidence that the ALJ has erroneously rejected.  *Lester*, 81
23 F.3d at 834; *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000).

REPORT AND
RECOMMENDATION – 12

Casimir Spytek's recollection that Spytek's back was troubling him a lot and preventing him from completing long-term activities in late 1997, Dr. Gilthvedt's opinion that Spytek's degenerative condition existed as early as 1987, and Spytek's own testimony undermine the reasonableness of the ALJ's inference.

When all the erroneously rejected evidence is credited as true, the ALJ's rationale for finding that Spytek could perform light work as of December 31, 1997 is not convincing and thus does not meet the requirements of SSR 83-20.

**F.     This case should be remanded for payment of benefits**

Spytek asks the Court to remand this case for an award of benefits.  The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*, 80 F.3d at 1292).  This occurs when:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.  *Id*. at 1076-77.

This case meets all three criteria.  The ALJ failed to provide legally sufficient reasons for rejecting Dr. Phan's opinion, failed to consider Casimir Spytek's and Dr. Gilthvedt's lay witness evidence, and erroneously rejected Spytek's own testimony.  On his date last insured, Spytek was closely approaching advanced age.  *See* 20 C.F.R. § 404.1563.  He had a high school education and was able to communicate in English.  Tr. 90, 97.  Although the ALJ did not determine whether Spytek had transferrable job skills, he acknowledged that if Spytek had the residual functional capacity to perform only sedentary work, he would have found him disabled.

REPORT AND
RECOMMENDATION – 13

Tr. 423.  Crediting the erroneously rejected evidence as true, it is clear the ALJ would be required to find Spytek capable of only sedentary work and thus disabled prior to his date last insured.  There are no outstanding issues to resolve.

In addition, the Court is mindful that plaintiff filed his application in 2001, nine years ago.  He has had three administrative hearings and has filed two civil actions, one after waiting more than two years for the Appeals Council to make a ruling in his case.  After one remand from this Court and one from the Appeals Council, "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey*, 298 F.3d at 1076.  Furthermore, the evidence in the record would require the ALJ to find the plaintiff disabled during the relevant period.  Under these circumstances, and in light of the length of time between the plaintiff's application and the present, this matter should be remanded with a direction for the award of benefits.  Because Spytek's alleged onset date is not inconsistent with the evidence in the record, under SR 83-20, Spytek should be awarded disability insurance benefits beginning on his alleged onset date, December 31, 1996.

## V.  CONCLUSION

For the foregoing reasons, the Court recommends that this case be **REVERSED** and **REMANDED** for an award of benefits.  A proposed order accompanies this Report and Recommendation.

DATED this 12th day August, 2010.

s/ BRIAN A. TSUCHIDA
United States Magistrate Judge